IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00026-KDB

| | |
|---|---|
| SHANEQUA DELANO,<br><br>    Plaintiff,<br><br>    v.<br><br>FRANK BISIGNANO,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff Shanequa Delano's appeal of an unfavorable administrative decision denying her application for disability insurance benefits under the Social Security Act. (Doc. No. 5). Having reviewed and considered the parties' briefs, the administrative record, and the applicable authority, the Court finds the Defendant Commissioner's decision to deny Ms. Delano Social Security benefits is supported by substantial evidence and uses the correct legal standards. Accordingly, the Commissioner's decision will be **AFFIRMED**.

    **I.**    **PROCEDURAL BACKGROUND**

On July 24, 2023, Ms. Delano applied for disability insurance benefits under Title II of the Social Security Act, alleging that she had been disabled since August 7, 2018. Doc. No. 6-2 at 30. Her claim was denied initially and upon reconsideration. *Id.* Ms. Delano then requested a hearing before an Administrative Law Judge ("ALJ"), where she was represented by a non-attorney representative. *Id.* After conducting the hearing, ALJ Nancy McCoy denied Ms. Delano's application in a decision dated June 25, 2024. *Id.* at 42. Ms. Delano sought review by the Appeals Council, which on September 3, 2024, was denied. *Id.* at 14-16. The ALJ's determination therefore

1

stands as the final decision of the Commissioner. Ms. Delano now timely seeks judicial review under 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration ("SSA") to determine whether Ms. Delano was disabled during the relevant period.[1] At step one, the ALJ found that Ms. Delano was not currently engaged in substantial gainful activity and had not done so from the alleged onset date of August 7, 2018, through December 31, 2019, the date last insured ("DLI"). Doc. No. 6-2 at 32. At step two, the ALJ found that Ms. Delano had the following severe impairments: "posttraumatic stress disorder; bipolar disorder; left knee s/p lateral meniscus tear and meniscectomy; [and] morbid obesity." *Id.* At step three, the ALJ found that none of Ms. Delano's impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at "20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526)." *Id.* at 33.

Before proceeding to step four, the ALJ found that Ms. Delano had the residual functional capacity ("RFC") to

> perform light (lift and carry 20 pounds occasionally and 10 pounds frequently, work as defined in 20 CFR 404.1567(b)) except she could frequently stoop; she could occasionally climb ramps/stairs, crouch, kneel and crawl; she was not able to climb ladders/ropes/scaffolds; she could not have tolerated exposure to hazards such as unprotected heights and moving machinery requiring alertness and agility to

---

[1] The ALJ must determine under the five-step sequential evaluation: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite the claimant's limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

avoid/evade; she was able to sustain concentration, persistence and pace to stay on task to carry out simple routine repetitive tasks in a work setting that does not require strict production quotas, such as set hourly production quotas, or a consistently fast pace, such as that required by high-speed conveyor belt assembly line work; she was able to occasionally interact with supervisors, coworkers and the public, but she was not able to provide direct customer service; she was able to deal with occasional changes in a routine work-setting.

Doc. No. 6-2 at 34-35.

At step four, the ALJ found that Ms. Delano was unable to perform any past relevant work as a cook or dietary aide. *Id.* at 40. Finally, at step five, the ALJ concluded that there were other jobs in significant numbers in the national economy that Ms. Delano could perform based on her age, education, work experience, and RFC. *Id.* at 40-41. These jobs included housekeeper, small parts assembler, and electronics worker. *Id.* at 41. Thus, the ALJ found that Ms. Delano was not disabled under the Social Security Act from August 7, 2018, through December 31, 2019, her DLI. *Id.*

### III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020).

> The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'

*Biestek v. Berryhill*, 587 U.S. 97, 98–99 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek*, 587 U.S. at 102 (citation modified). "[T]he threshold for such evidentiary sufficiency is

3

not high. Substantial evidence ... is more than a mere scintilla.[2] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 103 (citation modified). Accordingly, this Court does not review a final decision of the Commissioner *de novo, Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Shinaberry*, 952 F.3d at 120 (citation modified); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "the reviewing court does not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation modified). Rather, "where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's

---

[2] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not. *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction 'is so narrow that it is often very difficult for a court to decide upon which side of the line' evidence falls). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that 'scintilla is Latin for "whatever a judge wants it to mean." ' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

decision. *Id.* (citation modified); *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, in all cases the Court must always ensure that proper legal standards are being followed. *Long v. Kijakazi,* No. 1:22-CV-00091-KDB, 2022 WL 18026331, at *2–3 (W.D.N.C. Dec. 30, 2022).

## IV. DISCUSSION

Ms. Delano urges the Court to overturn the ALJ's findings of no disability or remand her case, alleging that the ALJ erred by improperly evaluating her posttraumatic stress disorder ("PTSD"), which led to an RFC that isn't supported by substantial evidence. *See* Doc. No. 8.

### A. Cherry-Picking the Record

Ms. Delano first alleges that the ALJ cherry-picked the record when she did not specifically reference some of the treatment notes in the record that Ms. Delano believes support a more restrictive RFC than the ALJ provided. Doc. No. 8 at 8. Specifically, she alleges the ALJ ignored numerous pieces of evidence related to Ms. Delano's reports of avoiding people. *Id.* at 10. The Commissioner in turn argues that the ALJ reviewed the record, sufficiently considered Plaintiff's subjective complaints related to her conditions, and reconciled the inconsistencies between the evidence, the record, and her testimony when developing the RFC. *See* Doc. No. 10 at 5.

An ALJ has the "obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). However, "this Circuit has recognized that there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Jonathan*

5

*W. v. Kijakazi*, No. 2:23-CV-00315, 2023 WL 5767748, at *9 (S.D.W. Va. Aug. 17, 2023), *report and recommendation adopted,* No. 2:23-CV-00315, 2023 WL 5751445 (S.D.W. Va. Sept. 6, 2023) (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)). And an ALJ's "failure to cite specific evidence does not indicate that it was not considered." *Manigo v. Colvin*, No. 0:13-CV-3185-BHH, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

Indeed, "there is no particular language or format that an ALJ must use in [her] ... analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." *Jonathan W.,* 2023 WL 5767748, at *9 (quoting *Clark v. Comm'r of Soc. Sec.*, No. 2:09-CV-417, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010)) (citation omitted). Thus, an ALJ's opinion is "sufficient if it not only sets forth the facts used in rendering [her] decision, but it also provides a thorough examination of the medical evidence." *Id*. (internal quotations omitted). Finally, it is imperative that an ALJ's decision be "read as a whole in order to discern whether substantial evidence supports a finding." *Id.*

While Ms. Delano contends that the ALJ ignored "numerous pieces of evidence," the record reflects otherwise. The evidence cited by Ms. Delano includes her hearing testimony (which the ALJ explicitly discussed), Dr. Wheeler's report, which the ALJ also discussed and found to be unpersuasive, a single treatment note from August 2018, where she reported "My PTSD … I don't mind staying in house because I don't like being around people," and a November 2023 treatment note (well after the DLI), in which Ms. Delano reported experiencing PTSD, sleep problems,

anger, and irritability and noted she was "trying to stay away from people." Doc. Nos. 6-7 at 262; 6-12 at 393.[3]

The Court finds these reference do not constitute "numerous" pieces of evidence and further observes that the symptoms described were considered by the ALJ and appropriately incorporated into the RFC when it limited her to no customer service and only occasional interaction with supervisors, coworkers, and the public. *See* Doc. No. 6-2 at 35. Importantly, a dislike of being around people and preference to avoid social interaction is not equivalent to an inability to engage with others without precipitating a PTSD episode. Ms. Delano's records indicate that she was able to care for her children, engage with her family, and attend both medical and psychotherapy appointments without exacerbating her PTSD, suggesting that she retained the capacity for *occasional* interpersonal interaction. *See generally* Doc. No. 6.

Indeed, Ms. Delano appears to misinterpret this Court's standard of review. The Court must determine whether substantial evidence supported the ALJ's findings, *not* whether other record evidence weighed against that finding. *See Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the plaintiff] disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."). The Court thus finds that the ALJ did not cherry-pick the record in support of her findings; rather, she supported them with substantial evidence, and the Court will not accept Ms. Delano's invitation to "reweigh the evidence." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).

---

[3] Ms. Delano references a few other statements pulled from visit notes that have a more tenuous link to "limit[ing] her interactions outside of her home," and the Court will not discuss them.

7

## B. Consideration of Dr. Wheeler's Evaluation

Ms. Delano next alleges that the ALJ also failed, for a variety of reasons, to properly evaluate the opinion of psychologist Dr. Wheeler. Doc. No. 8 at 11-12. The Court disagrees.

First, the ALJ, as required, considered Dr. Wheeler's opinion, a less than two-page letter to the VA (and a check-box form), which stated that "it is more likely than not that Mrs. Delano suffers from PTSD …" Doc. No. 6-12 at 466. Dr. Wheeler noted that his "professional diagnosis" was based on a single "[c]linical interview of Mrs. Delano" and "[r]eview of a [d]ecision [l]etter dated June 10, 2016 [well before the alleged onset date]." *Id.* at 465.

Finding the letter unpersuasive, the ALJ explains that it was a "one-time examination that was documented and supported only by an interview of the claimant's subjective reports about her mental health history." Doc. No. 6-2 at 39. She also explained that there was no evidence that Dr. Wheeler reviewed any of the records from Ms. Delano's treating physicians, and the opinion is otherwise inconsistent with Ms. Delano's own reports about her symptoms to her established providers around the same time.[4] *Id.* at 39. The Court finds no error with the ALJ's consideration of Dr. Wheeler's letter to the VA, nor her explanation as to why she found it unpersuasive, because the Court can trace her reasoning. *See Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) ("An

---

[4] While the Court will not undertake to reweigh the evidence, it does find the longitudinal record largely supports the ALJ's findings of inconsistency between Dr. Wheeler's opinion and Ms. Delano's reports to her treatment providers. For example, Ms. Delano subjectively reported anxiety or panic attacks "one to three times a day," to Dr. Wheeler. However, the record is remarkably devoid of discussion related to anxiety or panic attacks, aside from repeated references to a single anxiety attack that occurred long before the alleged onset date. *See* Doc. No. 6-7 at 11, 227, 246, 263; 6-10 at 78; 6-11 at 46, 65, 89. Similarly, despite a report of experiencing flashbacks to her treating psychiatrist (and shortly thereafter, to Dr. Wheeler), she was treated with medication and does not appear to have reported any occurrences to any providers thereafter. Doc. No. 6-11 at 65-74. This suggests, as the ALJ noted, that her psychiatric medications were effective. Doc. No. 6-2 at 38. Also, despite reporting hallucinations to Dr. Wheeler, she denied them to her treating social worker, *see* Doc. No. 6-7 at 255; 6-11 at 82, and the record otherwise lacks any other subjective reports of hallucinations.

ALJ's determination as to the weight [or persuasiveness] to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion.") (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).

Next, while Ms. Delano claims that the ALJ discounted Dr. Wheeler's opinion because it was for the purpose of increasing her VA benefits, this is not supported by evidence when viewed in context. 20 C.F.R. § 404.1504 requires the ALJ to "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [they] receive as evidence in your claim." The ALJ complied when she explained finding Dr. Wheeler's letter unpersuasive largely because it was a less than two-page cover letter stemming from a one-time visit that did not consider the findings of the treatment providers (including her social worker and psychiatrist) who knew Ms. Delano best. *See* Doc. No. 6-2 at 39. She then drew a comparison between those providers, who had detailed reports of symptoms over time and the brief note written by Dr. Wheeler after a single encounter for the purpose of adjusting her VA disability benefits. *Id.* The Court finds that the ALJ's focus appears not to be the *purpose* of Dr. Wheeler's letter, but rather the *content* (which she distinguished from Ms. Delano's treatment providers' documentation). *See* 20 C.F.R. § 404.1520c(c)(2) (explaining how medical opinions that are more consistent with "evidence from other medical sources and nonmedical sources" are more persuasive). Accordingly, the Court finds no legal error.

Finally, Ms. Delano claims the ALJ violated *Shelley C. v. Comm'r of Soc. Sec. Admin.,* 61 F.4th 341, 361 (4th Cir. 2023) as related to her PTSD, but the Court finds that *Shelley C.* does not control this case. Doc. No. 8 at 12. In 2020, the Fourth Circuit held that when diseases do not produce objective medical evidence, the lack thereof may not be used to discredit a claimant's

9

subjective symptoms of that disease. *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020). While *Arakas* only contemplated fibromyalgia, it left the door open for other diseases that similarly fail to produce objective medical evidence. 983 F.3d at 97. Approximately two years later, in *Shelley C.*, the Fourth Circuit expanded "other diseases" to include chronic depression (also called major depressive disorder ("MDD")). *See* 61 F.4th at 361. The court explained that an ALJ "will not disregard [a claimant's] statements about the intensity, persistence, and limiting effects of [MDD] symptoms *solely* because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* at 360 (emphasis added).

Yet, the Fourth Circuit "has *not* extended its holdings in *Arakas* and *Shelley C.* to mental impairments other than [MDD]." *Clifford E.*, 2024 WL 3105669, at *9 (emphasis in original) (declining to expand *Shelley C.* to include PTSD). Thus, "given the Fourth Circuit's repeated emphasis on the 'unique' nature of MDD, and the significant difference between the primary symptoms of [MDD and] PTSD,"[5] the Court finds *Shelley C.* distinguishable from Ms. Delano's circumstances. *Id.* But even if the Fourth Circuit had expanded *Shelley C.* to include PTSD, the ALJ did not rely exclusively on objective medical evidence to discount her PTSD symptoms, nor did she require such evidence to substantiate them. Instead, the ALJ found that the severity of Ms. Delano's subjectively reported symptoms, specifically to Dr. Wheeler and during the SSA hearing,

---

[5] According to the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V"), the primary symptoms of depression or MDD include "[d]epressed mood most of the day, nearly every day" and "[m]arkedly diminished interest or pleasure in all, or almost all, activities most of the day, nearly every day," whereas the primary symptoms of PTSD include "[e]xposure" to trauma which causes "[r]ecurrent distressing memories" and "dreams," "flashbacks," "[a]voidance," and "alterations in cognitions[,] mood[,] ... arousal[,] and reactivity." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 177, 301-2 (5th ed., text rev. 2022). *See Clifford E. v. O'Malley*, 2024 WL 3105669, at *9.

were "not entirely consistent with the medical evidence and other evidence in the record." Doc. No. 6-2 at 36. While Ms. Delano's established care team diagnosed her with PTSD, beyond that she offered relatively few, if any, complaints of PTSD symptoms or exacerbations, particularly after psychiatric medications were implemented. *See* Doc. No. 6-2 at 38. Despite this, the ALJ found PTSD to be a severe impairment, and as noted, credited her subjectively reported symptoms when crafting the RFC by significantly limiting her interactions with others.

Thus, as in *Drumgold v. Comm'r of Soc. Sec.,* 144 F.4th 596 (4th Cir. 2025) there was conflicting evidence that the ALJ resolved, and it is beyond the permissible role of this Court to reweigh the evidence or substitute its judgment for the ALJ's. *See Drumgold,* 144 F.4th at 605 (holding that because the ALJ is the trier of fact, the duty to resolve conflicting medical evidence lies with the ALJ and explaining that when the ALJ "does that by applying the correct factors, we won't Monday-morning-quarterback the decision unless it is exceptionally clear that the ALJ made a mistake."). Moreover, the ALJ offered a "sufficient rationale in crediting certain evidence and discrediting other evidence." *Id.* (quoting *Shelley C.,* 61 F4th at 353).

Therefore, Ms. Delano's appeal will be denied and the ALJ's decision will be affirmed.

## V. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

Plaintiff's appeal (Doc. No. 5) is **DENIED** and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 18, 2025

Kenneth D. Bell
United States District Judge

Case 3:25-cv-00026-KDB   Document 12   Filed 08/18/25   Page 11 of 11